# In the United States District Court
## for the Southern District of Georgia
## Waycross Division

TOMEKA JEAN, Individually and
as Next Friend and Natural
Mother of John Doe, a Minor
Child,

    Plaintiff,

    v.

LISA HORNSBY, Individually,
et al.,

    Defendants.

5:25-CV-138

## ORDER

Before the Court are a motion to dismiss filed by Defendant Lisa Hornsby, dkt. no. 7, and a motion to dismiss jointly filed by Defendants Sarah Belflower, Cathy Cason, Tiffany Crews, Sabrina Drayton, Mindi Johns, and James Sweat, dkt. no. 9. For the reasons stated below, both motions, dkt. nos. 7, 9, are **DENIED.**

## BACKGROUND[1]

Plaintiff Tomeka Jean brought this lawsuit on behalf of "John Doe," her minor son, to recover for his alleged sexual assault while in the custody of the Georgia Division of Family and Children

---

[1] When analyzing a motion to dismiss, the Court must "accept all factual allegations in a complaint as true and take them in the light most favorable to [the] plaintiff[.]" Dusek v. JPMorgan Chase & Co., 832 F.3d 1243, 1246 (11th Cir. 2016).

Services ("DFCS"). Dkt. No. 1-2.  According to the first amended complaint,[2] John Doe was placed in DFCS custody on December 4, 2024, due to "substandard" living conditions in the home constructed by his mother. Id. ¶ 12. Plaintiff, however, contends that her child was removed from her care despite there being "no legitimate complaints of any mistreatment by his mother." Id. ¶ 13. Plaintiff also contends that DFCS placed her child in the foster home of Defendant Lisa Hornsby, a foster parent, under the approval of DFCS County Director Cathy Cason. Id. ¶¶ 3, 4, 13, 14.

Plaintiff contends that Defendant Cason failed to follow proper DFCS protocols before placing John Doe in the Hornsby home. Id. ¶ 14. More specifically, Plaintiff claims that Cason had a duty to review DFCS history, abuse history, and the police record of a minor resident living in the Hornsby home, through which Defendant Cason allegedly "would have uncovered a prior history of abnormal sexual behavior" by that minor resident. Id. Plaintiff also alleges that Defendant Cason similarly failed to check Hornsby's caregiver history, which Plaintiff claims would have revealed multiple prior investigations by Child Protective

---

[2] Plaintiff originally filed her complaint in state court, then Defendants removed the case to this Court. Dkt. No. 1. Plaintiff amended her complaint prior to removal while the case was still pending in state court, dkt. no. 1-2, but Plaintiff has not amended her complaint since removal.

Services involving inadequate supervision and injuries to a child in the Hornsby home. Id. ¶ 15.

The operative complaint also outlines how other Defendants were allegedly involved in the decision to place Plaintiff's son in the Hornsby home. Id. ¶¶ 16–18. For example, Plaintiff contends that Defendant Sarah Belflower worked as a Social Services Supervisor with Ware County, Georgia, DFCS, was a DFCS case manager assigned to John Doe's case, and submitted a report to juvenile court which determined that John Doe had no relatives suitable for placement when DFCS removed him from his mother's care. Id. ¶ 16. The amended complaint further avers that Defendant Sabrina Drayton, a SAFE Certified Home Study Practitioner, failed to evaluate Hornsby's DFCS history or Hornsby's sixteen-year-old son living in the foster home before John Doe was placed there. Id. ¶ 17. Defendant Amanda Wilson, the SAFE Certified Home Study Supervisor, allegedly signed off on Defendant Drayton's assessment and approved the decision to place John Doe in the Hornsby home. Id. ¶ 18.

Once John Doe was placed in the Hornsby home, Defendant Hornsby allegedly left her minor son unsupervised with John Doe, which Plaintiff alleges was improper given Hornsby's "actual knowledge that her son had a history of inappropriate sexual behavior with small children." Id. ¶ 20. Plaintiff further alleges that, during supervised visitation with her son on January 21,

2025, her son told her that he had been struck by Defendant Hornsby and sexually assaulted by another minor resident of the Hornsby home. Id. ¶ 21. Plaintiff alleges she then reported this information to Defendant Tiffany Crews, a DFCS case manager tasked with overseeing John Doe in the Hornsby home. Id. ¶¶ 6, 22. Defendant Crews, however, purportedly approved the return of John Doe to the Hornsby home without asking that John Doe be separated from the individual alleged to have sexually assaulted him or otherwise inquiring into the sleeping arrangements at the foster home. Id. ¶ 23.

Plaintiff next alleges that, on January 22, 2025, Defendant James Sweat—a DFCS investigator and case worker—and Defendant Cason received a report that the minor resident in the Hornsby home had raped John Doe. Id. ¶¶ 5, 24. The report also indicated that Defendant Hornsby hit John Doe. Id. ¶ 24. Even with this reported sexual abuse to John Doe, Plaintiff alleges that Defendant Sweat and/or Defendant Rhonda Wheeler, DFCS Regional Director, allowed John Doe to remain in the Hornsby home with adjusted sleeping arrangements, despite the alleged existence of alternative facilities to house John Doe. Id. ¶¶ 26, 31. According to Plaintiff, Defendants Belflower, Sweat, Wheeler, Crews, and Cason failed to ensure proper DFCS investigative procedures were followed before declining to remove John Doe from the Hornsby home. Id. ¶¶ 31-36. John Doe underwent a forensic investigation on

4

January 24, 2025, during which he disclosed the details of his sexual abuse to the forensic investigator. Id. ¶ 30. John Doe was then removed from the Hornsby home and placed in alternative care. Id.

On July 11, 2025, Plaintiff filed suit on her own behalf and on behalf of her son in the State Court of Ware County, Georgia. Dkt. No. 1 ¶ 1; Dkt. No. 1-1. Plaintiff seeks, *inter alia*, monetary recovery for the alleged severe physical and mental injury suffered by John Doe as a result of various Defendants' decisions to leave him in the Hornsby home. See generally Dkt. No. 1-2. While still in state court, Plaintiff filed her first amended complaint on September 30, 2025. Dkt. No. 1 ¶ 1; Dkt. No. 1-2. Then, on October 29, 2025, Defendants removed to this Court. Dkt. No. 1. Plaintiff moved to remand the case to state court, dkt. no. 15, but the Court denied that motion, dkt. no. 33.

The amended complaint seeks monetary relief and attorneys' fees, naming as Defendants foster parent Lisa Hornsby, DFCS County Director Cathy Cason, DFCS investigator/case worker James Sweat, DCFS case manager Tiffany Crews, DFCS case worker Sarah Belflower, DFCS Regional Director Rhonda Wheeler, DFCS Caregiver Recruitment and Retention Unit ("CRRU") County Director Mendi Johns, DFCS Structured Analysis Family Evaluation ("SAFE") Certified Home Study Practitioner Sabrina Drayton, and DFCS SAFE Certified Home Study Supervisor Amanda Wilson. Dkt. No. 1-2 ¶¶ 3-11, 70. Plaintiff

asserts claims for alleged violations of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 (Counts I & II), "common law claims" against Defendant Hornsby in her individual capacity (Count III), and two claims for attorneys' fees pursuant to 42 U.S.C. § 1988 and O.C.G.A. § 13-6-11 (Counts IV & V).[3] See generally id.

Through two separate motions, Defendants now seek dismissal of the first amended complaint. Dkt. Nos. 7, 9. In the first motion, dkt. no. 7, Lisa Hornsby seeks dismissal of all claims against her. Dkt. No. 7.  In the second motion, six other Defendants (Sarah Belflower, Cathy Cason, Tiffany Crews, Sabrina Drayton, Mendi Johns, and James Sweat[4]) jointly move to dismiss the amended complaint. Dkt. No. 9.[5] Each motion has been fully briefed and is ripe for review. Dkt. Nos. 7, 9, 16, 17, 24, 26.

**DISCUSSION**

Each of the two motions to dismiss before the Court seek

---

[3] Two of Plaintiff's claims-Counts III and V—are pled "in the alternative." Dkt. No. 1-2 ¶¶ 58–63, 67–70. Count III, seeking recovery for "common law claims" against Defendant Hornsby, is pled in the alternative to the Section 1983 claims in Counts I and II. Id. ¶¶ 58–63. Likewise, Count V, seeking attorneys' fees from Defendant Hornsby under O.C.G.A. § 13-6-11, is framed as an alternative to the claim for attorneys' fees under 42 U.S.C. § 1988 alleged in Count III. Id. ¶¶ 67–70.

[4] The joint motion to dismiss filed by Defendants Belflower, Cason, Crews, Drayton, Johns, and Sweat includes as an attachment the "state employees' special appearance motion to dismiss and motion to dismiss" which was filed in state court before removal, as well as Plaintiff's response to that motion. Dkt. Nos. 9-1, 9-2.

[5] Of the nine Defendants named in this lawsuit, two Defendants— Rhonda Wheeler and Amanda Wilson—are not party to either of the motions to dismiss presently before the Court. Dkt. Nos. 7, 9.

dismissal of the first amended complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), while also raising various substantive arguments more aptly considered under the rules governing Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief may be granted. Dkt. Nos. 7, 9. Based on the arguments raised by Defendants, the Court must begin with the jurisdictional challenge to ensure it has the power to adjudicate this case. Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999). If the Court determines that it has subject matter jurisdiction, it may then reach the merits of the pending motions. Id. ("[T]he district court should have resolved the issue of subject matter jurisdiction before reaching the merits of any other issue[.]").

The Court holds that the principles of sovereign immunity cited by Defendants in both motions in support of their jurisdictional challenges do not divest this Court of subject matter jurisdiction over this removed action. Further, turning to the contents of the first amended complaint, the Court holds that the pleading contains various "shotgun pleading" characteristics. This being so, rather than dismissing this action for lack of compliance with federal pleading requirements stemming from Federal Rules of Civil Procedure 8 and 10, the Court provides Plaintiff one opportunity to file a second amended complaint.

I.    **Subject Matter Jurisdiction**

A.    **Legal Standard for Rule 12(b)(1) Motions to Dismiss**

Federal Rule of Civil Procedure 12(b)(1) is the means through which a party may seek dismissal of a claim for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). A "federal court is powerless to act beyond its statutory grant of subject matter jurisdiction." Hutson v. United States, No. 2:24-CV-96, 2025 WL 1287992, at *2 (S.D. Ga. May 2, 2025) (quoting Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2001)). When faced with such a challenge, a federal district court must "zealously" ensure that jurisdiction exists over each case which comes before it. Smith, 236 F.3d at 1299.

When a party files a Rule 12(b)(1) motion to dismiss, the challenge to the district court's subject matter jurisdiction may be based on "facial" or "factual" grounds. Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th Cir. 2009). Facial challenges are "based solely on the allegations in the complaint," while factual challenges may refer to extrinsic evidence. Id.

In a facial challenge to subject matter jurisdiction, "the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised." McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting Williamson v. Tucker,

8

645 F.2d 404, 412 (5th Cir. 1981)). Thus, a "'facial attack' on the complaint 'requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" Id. (quoting Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990) (alterations adopted)); see also Carmichael, 572 F.3d at 1279; Hutson, 2025 WL 1287992, at *2.

### B. Analysis

Each of the two motions before the Court contends that it is proper to dismiss Plaintiff's claims for lack of subject matter jurisdiction based on principles of sovereign immunity. Dkt. No. 7 at 6-13; Dkt. No. 9 at 4-5. To explain, Defendant Hornsby contends that sovereign immunity bars lawsuits against state employees, and while the Georgia Tort Claims Act ("GTCA") provides a limited waiver of such sovereign immunity, Plaintiff's claims against Hornsby are due to be dismissed because they do not fall within that waiver. Dkt. No. 7 at 6-8.

The jointly filing Defendants raise similar concerns in the second motion to dismiss. Dkt. No. 9. There, Defendants aver that the GTCA is the exclusive way to assert a tort claim against a state officer or employee for actions taken during the course and scope of his or her employment with a state governmental entity, meaning Plaintiff's tort claims must be brought pursuant to that

9

Act. Id. at 4-5; see also O.C.G.A. § 50-21-25(a) (stating that the GTCA constitutes the "exclusive remedy for any tort committed by a state officer or employee"). That being so, Defendants contend that Plaintiff must comply with the GTCA's terms and conditions, and a failure to do so warrants dismissal of the instant action. Dkt. No. 9 at 4-5. Like Defendant Hornsby, Defendants contend that the Court lacks subject matter jurisdiction, asserting that Plaintiff's claims, which center around sexual assault and battery, do not fall under the limited waiver of sovereign immunity provided by Georgia law. Id. at 4-5, 13.

Sovereign immunity does not render the Court powerless to hear the instant case for two reasons. First, Plaintiff brings this lawsuit against Defendants only in their individual—not official—capacities, largely foreclosing Defendants' sovereign immunity arguments. Wentworth v. Beauchamp, No. 2:21-CV-55, 2021 WL 4169785, at *3 (S.D. Ga. Aug. 18, 2021), report and recommendation adopted, 2021 WL 4166330 (Sept. 13, 2021). Second, even if the Court were to assume sovereign immunity applies to the claims at hand, such jurisdictional immunity was waived when Defendants removed this case to federal court. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 619-21 (2002); Meyers ex rel. Benzing v. Texas, 454 F.3d 503, 504 (5th Cir. 2006); see also Hyers v. Bacon Cnty., No. 5:24-CV-75, 2025 WL 3270206, at *3 n.3 (S.D. Ga. Nov. 24, 2025).

Sovereign immunity is a legal concept stemming from traditional principles of state sovereignty, as recognized by the Eleventh Amendment, the federal constitutional amendment which protects state governments from private suits in federal court. U.S. Const. amend. XI; Wentworth, 2021 WL 4169785, at *3; Stroud v. McIntosh, 722 F.3d 1294, 1298 (11th Cir. 2013) (citing Alden v. Maine, 527 U.S. 706, 7134 (1999); Erwin Chemerinsky, Federal Jurisdiction 422 (6th ed. 2012) ("The Court has thus ruled that there is a broad principle of sovereign immunity that applies in both federal and state courts; the Eleventh Amendment is a reflection and embodiment of part of that principle.")).

Sovereign immunity as recognized by the Eleventh Amendment has been characterized as "jurisdictional," meaning a federal court lacks subject matter jurisdiction, the power to hear the case, with respect to claims against a defendant who is immune to suit under the Eleventh Amendment. See Hyers, 2025 WL 3270206, at *3 n.3 (citing Suarez Corp. Indus. v. McGraw, 125 F.3d 222, 227 (4th Cir. 1997)). Further, Eleventh Amendment immunity extends not only to state governments themselves, but also state officials and employees. Id. For example, "a lawsuit against a state agency or a state officer in their official capacity is 'no different from a suit against the [s]tate itself,'" meaning individual state officials or employees are, under certain circumstances, immune from private suit under the Eleventh Amendment. Upkins v. Coleman,

11

No. 5:20-CV-140, 2021 WL 1705222, at *2 (S.D. Ga. Apr. 6, 2021) (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989)), report and recommendation adopted, 2021 WL 1700046 (Apr. 29, 2021).

Importantly, however, sovereign immunity "does not protect state employees sued in their individual capacity for employment-related acts." Mosley v. Edwards, No. CV 325-062, 2026 WL 1346508, at *2 (S.D. Ga. Mar. 26, 2026) (quoting Jackson v. Ga. Dep't of Transp., 16 F.3d 1573, 1575 (11th Cir. 1994)). Here, the amended complaint states clearly in its caption that this is a suit against Defendants in their *individual* capacities, not their official capacities. See Dkt. No. 1-2 at 2. As such, this casts significant doubt on Defendants' contentions that the claims against them should be dismissed for lack of subject matter jurisdiction based on sovereign immunity. Dkt. No. 7 at 6–8; Dkt. No. 9 at 4–5; see also Wentworth, 2021 WL 4169785, at *3.

The Court notes, however, that "merely styling a suit against a public officer as one brought against her personally does not deprive her of any immunity to which she might otherwise be entitled" under constitutional principles and associated Georgia law. Smith v. Hatcher, 516 F. Supp. 3d 1369, 1377 n.7 (S.D. Ga. 2019) (citing O.C.G.A. § 50-21-25(a); Stephens v. Coan, 825 S.E.2d 525 (Ga. Ct. App. 2019)). That being so, even assuming the movant-Defendants could be entitled to sovereign immunity despite the

12

caption's clear indication that this suit is against them in their individual capacities, there exists another reason why dismissal on *jurisdictional* sovereign immunity grounds is improper: this case was removed to federal court. See Hyers, 2025 WL 3270206, at *3 n.3; Dkt. No. 1.

Like most general rules, sovereign immunity is not without exceptions. Stroud, 722 F.3d at 1298. Pursuant to one such exception recognized by the Supreme Court, a state can waive its own sovereign immunity. Id. (citing Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999)). As highlighted in both of the motions to dismiss before the Court, the Georgia state legislature, through the GTCA, created a limited waiver of sovereign immunity. Dkt. Nos. 7, 9; Hatcher, 516 F. Supp. 3d at 1378 (considering "the extent of the State's sovereign immunity, together with any modification of that immunity under the GTCA"). Another means through which a state may waive its sovereign immunity, in both actions asserting state-law claims (as established by the Supreme Court in Lapides, 535 F.3d at 623–24) and actions asserting federal claims (as clarified by the Eleventh Circuit in Stroud, 722 F.3d at 1301–04), is by removing an action from state court to federal court.

The Supreme Court clarified the reason for this exception in Lapides, taking issue with the "inconsistency, anomaly, and unfairness" which could result if defendants could voluntarily

13

invoke a federal court's jurisdiction through removal, only to deny that very court's jurisdiction to resolve the case once removal was effectuated. 535 U.S. at 619–23; see also Stroud, 722 F.3d at 1299–1301. Ultimately, the Court stated that "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter ... in a federal forum." Lapides, 535 U.S. at 623–24. While the holding in Lapides was limited to the state law claims at issue in that case, the Eleventh Circuit later reached the same issue with respect to a case involving federal claims in Stroud, concluding that state defendants waived their defense of immunity from litigation in a federal forum by removing an action involving federal claims to federal court. 722 F.3d at 1303–04.

The same principles apply to the instant action. Plaintiff originally initiated this action in the State Court of Ware County, Georgia. See Dkt. No. 1-1. When all Defendants removed the case to this Court, they invoked federal jurisdiction, the same jurisdiction which they now claim is lacking in the pending motions to dismiss. Dkt. Nos. 1, 7, 9; Stroud, 722 F.3d at 1301–04; Lapides, 535 U.S. at 619–24. As such, based on binding caselaw from both the Supreme Court and the Eleventh Circuit, Defendants' sovereign immunity arguments fail to the extent they seek dismissal for lack of subject matter jurisdiction under Federal Rule of Civil

Procedure 12(b)(1). Dkt. Nos. 7, 9.

It is important to note, though, the limits of the Court's holding with respect to Defendants' jurisdictional sovereign immunity challenge. Sovereign immunity is a divisible concept, meaning a state may act in a way which leads it to waive some aspects of sovereign immunity while retaining others. Stroud, 722 F.3d at 1301 (citing Lombardo v. Penn. Dep't of Pub. Welfare, 540 F.3d 190, 198–200 (3d Cir. 2008); Meyers ex rel. Benzing v. Texas, 410 F.3d 236, 252–55 (5th Cir. 2005)). One such distinction is the difference between immunity to a federal forum's exercise of jurisdiction and immunity to *liability* for the claims brought in that forum. Id. at 1303–04. "[W]hile voluntary removal waives a State's immunity from suit in a federal forum, the removing State retains all defenses it would have enjoyed had the matter been litigated in state court, including immunity from liability." Lombardo, 540 F.3d at 198.

According to these principles, the Court concludes that Defendants waived the ability to assert a jurisdictional sovereign immunity challenge for Rule 12(b)(1) purposes when they removed this action to federal court, but Defendants did not waive their ability to assert sovereign immunity as an affirmative defense to liability analyzed under the principles governing Rule 12(b)(6) motions to dismiss. See, e.g., Gregory v. Mia.-Dade Cnty., Fla., 86 F. Supp. 3d 1333, 1337 (S.D. Fla. 2014) (granting in part Rule

15

12(b)(6) motion to dismiss because defendant was "entitled to the affirmative defense of sovereign immunity"); see also Dkt. No. 1; Stroud, 722 F.3d at 1301–04; Hyers, 2025 WL 3270206, at *3 n.3 (similar).[6]

## II.  Failure to State a Claim

### A.   Legal Standard for Rule 12(b)(6) Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) is the means through which a party may seek dismissal of a claim for failure to state a claim on which relief can be granted. See Fed. R. Civ. P. 12(b)(6). Whether a federal district court should grant such a motion depends on whether a complaint complies with federal pleading requirements stemming from Federal Rule of Civil Procedure 8 and associated caselaw. See Fed. R. Civ. P. 8, 12(b)(6). Rule 8 provides general requirements for pleadings filed in federal court and expounds upon what it means to "state[] a claim for relief." Fed. R. Civ. P. 8(a).

Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A complaint need not include "detailed factual

---

[6] At present, the Court makes no pronouncement as to whether Defendants will succeed on the affirmative defense of sovereign immunity; this Order merely clarifies that Defendants' ability to raise such a defense was not waived with removal. Based on the Court's analysis of the operative complaint as a shotgun pleading and its decision to allow Plaintiff to amend the complaint, described infra, the Court need not reach the merits of the sovereign immunity affirmative defense at this time.

16

allegations," but the federal rules require more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[L]abels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id. (quoting Twombly, 550 U.S. at 555).

To withstand a motion to dismiss for failure to state a claim made pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

At this procedural posture, the Court must accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016) (citing Ironworkers Loc. Union 68 v. AstraZeneca Pharms., LP, 634 F.3d 1352, 1359 (11th Cir. 2011)). Legal conclusions, however, are not afforded the same assumption of truth. Iqbal, 556 U.S. at 678–80. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. And the Court

17

need not "accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

A complaint will not survive a motion to dismiss if it merely recites the elements of the claim and declares that they are met. Iqbal, 556 U.S. at 680–81. Instead, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)). Ultimately, the factual allegations must be sufficient to "permit the [C]ourt to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679.

### B.   Analysis

Both pending motions to dismiss present arguments for dismissal on Rule 12(b)(6) grounds, including the previously referenced affirmative defense of sovereign immunity lingering from Defendants' attempted jurisdictional challenge. See generally Dkt. Nos. 7, 9. Before reaching the merits of these arguments, however, the Court must honor another responsibility: addressing, sua sponte, the "shotgun pleading" characteristics exhibited by the operative complaint. See Johnson Enters. of Jack., Inc. v. FPL Grp., Inc., 162 F.3d 1290, 1333 (11th Cir. 1998) (defining a district court's duty to define issues early in the litigation

18

process instead of allowing shotgun pleadings to proceed). The operative complaint exhibits multiple shotgun pleading characteristics, but Plaintiff shall be afforded leave to amend the complaint to remedy these deficiencies.

### 1.    Shotgun Pleading

While Federal Rule of Civil Procedure 8(a)(2) highlights that the substantive allegations in a complaint must amount to a "short and plain statement of the claim showing the pleader is entitled to relief," Rule 10 governs the mechanics of such pleadings. Fed. R. Civ. P. 10. Specifically, Rule 10(b) specifies the proper formatting for a complaint in federal court and states that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). These two procedural rules— Rules 8 and 10—work in tandem to promote clarity and help defendants and the courts discern what a plaintiff is claiming. Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015). This gives a defendant the clarity he needs in order to frame a responsive pleading. Barmapov v. Amuial, 986 F.3d 1321, 1324 (11th Cir. 2021) ("The 'self-evident' purpose of these rules is 'to require the pleader to present his claims discretely and succinctly, so that[ ] his adversary can discern what he is claiming and frame a responsive pleading.'" (quoting Weiland, 792 F.3d at 1320)). If a complaint fails to serve this purpose, it is

19

deemed an impermissible "shotgun pleading." Weiland, 792 F.3d at 1320.

Even where the parties do not raise the shotgun pleading issue, the Court may act *sua sponte* to address shotgun pleadings. Id. at 1321 n.10. To do so, a district court may *sua sponte* require the plaintiff to file a more definite statement based on its "inherent authority to control its docket and ensure the prompt resolution of lawsuits[.]" Id. at 1320; Holbrook v. Castle Key Ins. Co., 405 F. App'x 459, 460 (11th Cir. 2010) (citing Fikes v. City of Daphne, 79 F.3d 1079, 1083 n.6 (11th Cir. 1996)). In fact, Eleventh Circuit jurisprudence actually suggests that district courts have not just an ability, but a *responsibility* to intervene *sua sponte* to define issues early in litigation rather than allowing a complaint to proceed past the pleading stage without complying with Rules 8 and 10. Johnson Enters. of Jack., 162 F.3d at 1333; see also U.S. Sec. & Exch. Comm'n v. Spartan Sec. Grp., Ltd., 164 F.4th 1231, 1285–1302 (11th Cir. 2026) (Tjoflat, J., dissenting) (outlining, in great detail, the dangers of allowing shotgun pleadings to surpass a motion to dismiss and stressing that it is the plaintiff's burden to notify defendants of the predicate acts supporting each cause of action, "not the District Court's role").

The Eleventh Circuit has identified four primary types of shotgun pleadings:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

Weiland, 792 F.3d at 1321–23 (footnotes omitted). This circuit has also indicated that it has "little tolerance for shotgun pleadings," given that "[t]hey waste scarce judicial resources, inexorably broaden[ ] the scope of discovery, wreak havoc on appellate court dockets, and undermine[ ] the public's respect for the courts." Philippeaux v. Mia. Apartments Inv'rs, LLC, No. 22-11692, 2023 WL 2989831, at *1 (11th Cir. Apr. 18, 2023) (quoting Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018)).

Here, the operative complaint contains multiple counts which "adopt[] the allegations of all preceding counts," causing each

21

successive count to carry everything that came before it. Dkt. No. 1-2; Weiland, 792 F.3d at 1321. At the beginning of Count II, Plaintiff states that she "reaffirm[s], reiterate[s], and incorporate[s] by reference each and every allegation previously alleged within the Complaint," which includes the prior allegations in Count I. Dkt. No. 1-2 ¶ 50. Count IV suffers from a similar deficiency, stating that "Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 63 as though fully set forth herein." Id. ¶ 64. Given that this statement is made in Paragraph sixty-four of the operative complaint, the result is that all prior allegations, and the three counts which came before it, are all incorporated into Count IV. Id. This falls short of the federal pleading requirements stemming from Rules 8 and 10 and associated caselaw and falls within the most common category of shotgun pleadings identified by the Eleventh Circuit in Weiland. Fed. R. Civ. P. 8, 10; Weiland, 792 F.3d at 1321–23.

Additionally, Plaintiff's complaint "commits the sin of not separating into a different count each cause of action or claim for relief." Weiland, 792 F.3d at 1322–23. Count III is given the general label of "common law claims against Defendant Hornsby in her individual capacity." Dkt. No. 1-2 ¶¶ 58–63. But "common law claims" could mean any number of causes of action, and the substantive allegations in Count III only exacerbate this concern. Id. On one hand, Count III seeks to hold Defendant Hornsby liable

for "negligent supervision." Id. ¶ 59; see also Leo v. Waffle House, Inc., 681 S.E.2d 258, 262 (Ga. Ct. App. 2009) (discussing negligent supervision claims under Georgia law). But, in the same count, Plaintiff also seeks to hold Ms. Hornsby liable for hitting John Doe and causing physical harm, dkt. no. 1-2 ¶ 60, which is more reminiscent of a cause of action for battery under Georgia law, Everett v. Goodloe, 602 S.E.2d 284, 291 (Ga. Ct. App. 2004) ("[T]he act of intentionally causing actual physical harm to another is civilly actionable as a battery[.]").

Still in Count III, Plaintiff then challenges yet another alleged action by Ms. Hornsby: Hornsby's purported failure to disclose in her foster parent application her son's history of sexual assault and her own history of DFCS investigations. Id. ¶ 61. While the cause of action through which Plaintiff seeks to raise this third issue is unclear, id., a "false representation or omission of a material fact" is an element of the tort of fraud as recognized by Georgia courts, ReMax N. Atlanta v. Clark, 537 S.E.2d 138, 141 (Ga. Ct. App. 2000). This fails to satisfy federal pleading requirements, especially in light of the distinct pleading requirements to state each of the potential causes of action all lumped into Count III. Compare Leo, 681 S.E.2d at 262 (discussing negligent supervision), with Everett, 602 S.E.2d at

23

291 (defining civil battery), and Clark, 537 S.E.2d at 141 (listing elements of civil fraud).[7]

### 2.    Leave to Amend

Despite the current deficiencies plaguing the complaint, the Court elects to give Plaintiff an opportunity to amend her complaint in an effort to reach the merits of this case. Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC, 7 F.4th 989, 1000 (11th Cir. 2021) (citing Shipner v. E. Air Lines, Inc., 868 F.2d 401, 406–07 (11th Cir. 1989) (Rule 15's "liberally permitting amendments to facilitate [the] determination of claims on the merits circumscribes the exercise of the district court's discretion.")). Regarding amendment, when the time to amend a pleading as a matter of course has passed, a party may nonetheless amend a pleading with the Court's leave. Fed. R. Civ. P. 15(a)(2). A district "court should freely give leave when justice so requires," id., unless there is an "apparent or declared reason" to deny it such as "undue prejudice to the opposing party," Pinnacle, 7 F.4th at 999–1000 (citing Foman v. Davis, 371 U.S. 178, 182 (1962); Garfield v. NDC Health Corp., 466 F.3d 1255, 1270

---

[7] By listing the various causes of action which Plaintiff *could* be attempting to assert in Count III, the Court is not opining on whether the elements of those causes of action are sufficiently pled. Rather, the Court points to negligent supervision, battery, and fraud under Georgia law to illustrate how Plaintiff failed to split each potential cause of action into its own count, a characteristic of a shotgun pleading recognized in this circuit. Weiland, 792 F.3d at 1322–23.

24

(11th Cir. 2006)).

District courts have considerable discretion when deciding whether to grant leave to amend, but that discretion should generally be exercised in a manner favoring amendment rather than wholesale dismissal in an effort to reach the merits of a dispute. Pinnacle, 7 F.4th at 1000 (citing Shipner, 868 F.2d at 406–07). This discretion also extends to allow amendments to pleadings "even when a party does not formally request leave." Id. (citing Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002) (en banc) (holding that a "district court is not *required* to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court" (emphasis added))). At bottom, "when a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds." Vibe Micro, 878 F.3d at 1296.

Here, Plaintiff is represented by counsel. Dkt. No. 1-2 at 17. Plaintiff has not filed a motion to amend the complaint and does not otherwise request leave to amend. And, though Plaintiff has once amended her complaint, she did so in state court prior to removal. Dkt. Nos. 1-1, 1-2. This is important because, under Eleventh Circuit jurisprudence, district courts are to "explain

how the offending pleading violates the shotgun pleading rule" before giving an opportunity to replead. <u>Vibe Micro</u>, 878 F.3d at 1296. By providing a "veritable instruction manual" on how a party may remedy the deficient pleading, the Court provides sufficient information to allow the party to avoid future shotgun pleadings. <u>Id.</u> Here, despite the fact that the operative complaint is Plaintiff's second attempt at pleading, it is the first complaint that this Court is analyzing for compliance with Rules 8 and 10. Dkt. Nos. 1, 1-1, 1-2. This being so, until now, Plaintiff had received no explanation from this Court of how the operative complaint violates the shotgun pleading rule. <u>See</u> <u>Vibe Micro</u>, 878 F.3d at 1296.

Additionally, the parties have presented no suggestion of undue prejudice at play in this case such that it would be improper to allow Plaintiff to amend the complaint, especially where this would be Plaintiff's first time amending the complaint since the case was removed and became subject to federal pleading requirements. <u>See</u> Fed. R. Civ. P. 81(c)(1) (describing applicability of the Federal Rules of Civil Procedure when a civil action is removed from a state court). As a result, the Court holds that it is proper to allow Plaintiff to replead the amended complaint to remedy the deficiencies described in this Order. Accordingly, the Court **DENIES** both pending motions to dismiss, dkt. nos. 7 and 9, at this time and **ORDERS** Plaintiff to file an

amended complaint within **twenty (20) days** of the date of this Order. Plaintiff is warned that a failure to assert sufficient factual allegations to support a plausible claim for relief will result in dismissal of this case.

**CONCLUSION**

Lisa Hornsby's motion to dismiss, dkt. no. 7, is **DENIED.** Likewise, the motion to dismiss filed by Defendants Sarah Belflower, Cathy Cason, Tiffany Crews, Sabrina Drayton, Mindi Johns, and James Sweat, dkt. no. 9, is **DENIED.** Plaintiff is **ORDERED** to file a second amended complaint, in accordance with the federal pleading requirements identified above, within **twenty (20) days** of the date of this Order.

**SO ORDERED** this 30th day of July, 2026.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA